**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,

     *Plaintiff-Respondent*,

v.

                           Case No. 22-CR-40054-EFM
                           Case No. 25-CV-04100-EFM

ADALBERTO SANTOS PEREZ,

     *Defendant-Petitioner.*

## MEMORANDUM AND ORDER

Before the Court is pro se Defendant-Petitioner Adalberto Santos Perez's Motion to Vacate, Set Aside, or Correct the Sentence Pursuant to 28 U.S.C. § 2255 (Doc. 114). Perez argues his counsel provided constitutionally ineffective assistance throughout the course of his sentencing proceedings. The Government opposes Perez's Motion. For the reasons stated below, the Court denies Perez's Motion in part without an evidentiary hearing. But the Court determines an evidentiary hearing is necessary before the Court can rule fully on Perez's ineffective assistance claim regarding the two-level importation enhancement the Court assessed against him under U.S.S.G. § 2D1.1(b)(5).

### I.      Factual and Procedural Background

Perez's case began when he was charged by complaint for drug conspiracy alongside his co-defendant, Oscar David Ibarra Tapia ("CD3"), on August 23, 2022. Counsel Adam Hall represented Perez throughout the course of his case.

On May 31, 2023, Perez pled guilty to Count 1 of the Superseding Information against him—possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). As part of his plea agreement, Perez agreed to the following set of facts:

On August 21, 2022, Deputy Andrew Toolin, Dickinson County, Kansas Sheriff's Office, conducted a lawful traffic stop in Dickinson County, Kanas. CD3 was ultimately arrested. A lawful search incident to this lawful arrest yielded three pounds of methamphetamine.

CD3 identified Perez as the intended recipient of the three pounds of methamphetamine. He/she said that Perez had asked him/her if he/she wanted to make $4,000 by driving to Denver, Colorado to pick up three pounds of methamphetamine and transporting it back to Kansas City, Kansas. CD3 had agreed and stated that he/she was on his/her way to deliver the methamphetamine to Perez when he was stopped by law enforcement.

Between August 21 and August 22, law enforcement worked with CD3 to set a controlled delivery of sham methamphetamine to Perez. Law enforcement directed CD3 to contact Perez to set the delivery by informing Perez that his/her car was having trouble. Law enforcement staged CD3's car in the parking lot of the Hollywood Casino in Wyandotte County, Kansas. CD3 contacted Perez to let him know where the car was located. Perez responded by confirming that he would come, possibly to tow the car.

At around 5:00 p.m. on August 22, Perez arrived at the Hollywood Casino in his tow truck. Unbeknownst to him, law enforcement was in position waiting for him. As Perez approached the passenger side of the car, law enforcement swarmed Perez and detained him. A search of Perez's person by law enforcement yielded a cell phone. Law enforcement approached Perez and asked him the number of the cell phone that was found on his person. Perez told them the number. This was the same number that CD3 had been calling and texting while working with law enforcement to set up the controlled delivery.

Post-arrest and post-*Miranda*, Perez admitted that he sold methamphetamine to one person (CD1) and he also admitted to dealing to another person (CD2). Unbeknownst to Perez, CD1 had previously informed the Drug Enforcement Administration (DEA) that he/she would purchase one (1) pound quantities of methamphetamine from Perez for $5,000, and that he/she was able to meet with Perez at Perez's residence. CD1 informed DEA that he/she observed pound package quantities of methamphetamine filling an area described by CD1 as 3' x 6' and packages of fentanyl equal to 400 kilograms of heroin. CD1 further stated that each kilogram of fentanyl had a 400 stamp, which would have the same potency of 400 kilograms of heroin, and that CD1 would then break the fentanyl down at a 1/400 ratio. CD1 stated that she/he purchased a conservative amount of 300 - 500 pounds of methamphetamine from Perez from July 2021 through December 2021.

Further unbeknownst to Perez, CD2 had informed DEA that prior to her/his arrest Perez brought CD2 two (2) pounds of methamphetamine. CD2 purchased one (1) pound of methamphetamine from Perez for $6000 and Perez fronted CD2 the other pound of methamphetamine. CD2 also told DEA that she/he then began to purchase methamphetamine from Perez on a weekly basis, in amounts of between seven (7) and eight (8) kilograms or seven (7) to eight (8) pounds of methamphetamine. CD2 stated that the weights varied between kilograms and pounds, based upon how Perez would have the methamphetamine packaged. CD2 stated that after he/she purchased methamphetamine from Perez for a month, Perez began to bring fentanyl pills for CD2 to purchase. CD2 stated that on the first occasion, Perez brought 1,000 pills. Thereafter, CD2 purchased 5,000 pill quantities. CD2 stated that he/she would purchase the fentanyl pills every other week. CD2 stated that he/she could not sell the fentanyl pills as fast as the methamphetamine.

A forensic chemist with the DEA North Central Laboratory subsequently determined that the suspected narcotics seized from CD3 on August 21, 2022, consisted of a net weight of 1,351.4 grams of methamphetamine actual.

Prior to Perez's sentencing hearing, the United States Probation Office prepared a Presentence Investigation Report ("PSR"). Perez's counsel and the Government made objections to the PSR, and Perez's counsel filed a Sentencing Memorandum with the Court. The Court held a sentencing hearing on January 18, 2024. After hearing counsels' arguments and evidence, the Court assessed a two-level enhancement against Perez under U.S.S.G. § 3B1.1(c) and a two-level enhancement under § 2D1.1(b)(5). The Court sentenced Perez to 225 months' imprisonment followed by a five-year term of supervised release.

Perez timely filed the instant Motion to Vacate on October 14, 2025. The Government filed a Response, to which Perez did not reply.

## II.    Legal Standards

Under 28 U.S.C. § 2255(a),

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

According to Rule 4(b) of the Rules Governing § 2255 Proceedings for the United States District Courts,

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . . If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

The court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[1] The petitioner must allege facts that, if proven, would warrant relief from his conviction or sentence.[2] An evidentiary hearing is not necessary where a § 2255 motion contains factual allegations that are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.[3]

---

[1] 28 U.S.C. § 2255(b).

[2] *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995), *overruled in part on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001).

[3] *See id*. (stating that "the allegations must be specific and particularized, not general or conclusory"); *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims that were merely conclusory in nature and without supporting factual averments).

Because Perez proceeds pro se, the Court holds his pleadings to "less stringent standards than formal pleadings drafted by lawyers."[4] A pro se litigant is entitled to a liberal construction of his pleadings.[5] But it is not the proper role of a district court to "assume the role of advocate for the pro se litigant."[6]

### III.    Analysis

Perez asserts that he is entitled to relief based on his counsel's ineffectiveness. "The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel at all critical stages of the criminal proceedings," including sentencing.[7] To succeed on an ineffective assistance of counsel claim, Perez must meet the two-prong test set forth in *Strickland v. Washington*.[8] Under *Strickland*, a defendant must show (1) his counsel's representation was constitutionally deficient because it fell below an objective standard of reasonableness, and (2) the deficiency prejudiced him because it deprived him of the right to a fair trial.[9]

To prevail on the first prong, a defendant must demonstrate his counsel's omissions fell "outside the wide range of professionally competent assistance."[10] This standard is "highly demanding."[11] Counsel's strategic or tactical decisions are presumed correct, unless they were

---

[4] *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[5] *See Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007) ("Because Mr. Trackwell appears pro se, we review his pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys.").

[6] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[7] *United States v. Orduno-Ramirez*, 61 F.4th 1263, 1267 (10th Cir. 2023) (citations and quotation marks omitted).

[8] 466 U.S. 668 (1984)

[9] *Id.* at 687.

[10] *Id.* at 690.

[11] *Kimmelman v. Morrison*, 477 U.S. 365. 382 (1986).

"completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy."[12] The reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the alleged error.[13] "[E]very effort should be made to 'eliminate the distorting effects of hindsight.'"[14]

To prevail on the second prong, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[15] The court must determine "whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."[16] Courts reviewing an attorney's performance must exercise deference, as "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[17] A failure to prove one of the *Strickland* prongs is dispositive, and a court may dispose of either the first or second prong, whichever is easier to resolve.[18]

Perez argues his counsel rendered ineffective service on four grounds throughout the course of his sentencing proceedings. The Court has reviewed Perez's grounds for § 2255 relief and the record in this case. As the Court first explains, most of Perez's arguments are foreclosed by the record and are accordingly denied without an evidentiary hearing. The Court then explains which ground requires an evidentiary hearing and instructs the parties on future proceedings.

---

[12] *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quoting *Hatch*, 58 F.3d at 1459) (alteration in original).

[13] *See Edens v. Hannigan*, 87 F.3d 1109, 1114 (10th Cir. 1996) (citing *Strickland*, 466 U.S. at 689).

[14] *Id.* (quoting *Strickland*, 466 U.S. at 689).

[15] *Strickland*, 466 U.S. at 694.

[16] *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (citation omitted).

[17] *Strickland*, 466 U.S. at 690.

[18] *United States v. Orange*, 447 F.3d 792, 796–97 (10th Cir. 2006) (citations omitted).

**A.    Grounds Not Requiring an Evidentiary Hearing**

In three of Perez's four grounds arguing his counsel rendered ineffective assistance, the record conclusively shows that Perez is not entitled to relief such that an evidentiary hearing is unnecessary.[19] The Court addresses these grounds in turn.

*1.    Leadership Enhancement*

First, Perez argues his counsel was ineffective by failing to challenge the Court's assessment of a two-level enhancement under U.S.S.G. § 3B1.1(c) on the basis that Perez was an organizer, leader, manager, or supervisor of the criminal activity. The PSR recommended this two-level enhancement based on statements made by CD1, CD2, and CD3 indicating Perez's managerial and leadership role within the drug trafficking operation.[20] Perez maintains he was merely a "middleman," and faults his counsel for failing to argue as such.

While counsel may not have used the term "middleman" to describe Perez, counsel made several arguments throughout Perez's sentencing proceedings asserting he was not an organizer, leader, manager, or supervisor. Counsel first did so in the PSR when responding to the Government's objection requesting a four-level enhancement instead of a two-level enhancement based on Perez's role.[21] Perez notes his counsel's *response* but seemingly argues counsel's failure to include this argument as its own *objection* in the PSR waived the dispute entirely.[22]

---

[19] *See* 28 U.S.C. § 2255(b).

[20] Doc. 88 at 22–23, ¶¶ 119–21.

[21] Doc. 88 at 22, ¶¶ 116–18.

[22] *See* Doc. 114 at 7 (arguing "[w]hen counsel finally contested the 2-level enhancement in the Sentencing Memorandum, it was too little and too late") (citing *United States v. West*, 550 F.3d 952, 957 n.3 (10th Cir. 2008) ("If a defendant fails to make such an objection, we will deem him to have waived any dispute regarding the facts set forth in the PSR.")).

The Court, however, did not consider the dispute waived. And counsel continued to argue the issue throughout the sentencing proceedings. Counsel specifically objected to the two-level enhancement in the Sentencing Memorandum arguing that Perez was "merely a supplier" to CD1 and CD2, and was only "reactive" to CD3's texts concerning the Denver trip.[23] At the sentencing hearing, counsel summarized the texts he relied on to argue that Perez did not display the leadership or control contemplated by the role enhancement.[24] The Court considered all of counsel's arguments to determine whether a leadership enhancement was appropriate. Accordingly, Perez cannot establish prejudice in his counsel's failure to include this argument as an objection in the PSR itself, and his contention that counsel ineffectively failed (in terms of the Sixth Amendment) to argue he was a "middleman" is incorrect.

Perez also argues his counsel was ineffective for failing to argue that his relationship with CD1 and CD2 was immaterial to assessing a role enhancement against him. Perez argues these dealings are irrelevant because he did not plead guilty to a conspiracy, and neither CD1 nor CD2 were charged in connection with his case. A role enhancement, however, is not limited to the offense of conviction, nor is it contingent on whether others are charged in connection with the case.[25] A role enhancement may also be assessed based on Perez's *relevant* conduct, including actions "that were part of the same course or conduct or plan as the offense of conviction."[26] Perez's dealings with CD1 and CD2 were part of the same course or conduct of his conviction of

---

[23] Doc. 90 at 9–10.

[24] Doc. 108 at 8–9.

[25] *See* U.S.S.G. § 3B1.1 intro. cmt. ("The determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 . . . and not solely on the basis of elements and acts cited in the count of conviction.").

[26] U.S.S.G. § 1B1.3(a)(2). Because Perez's base offense level guideline was contained in § 2D1.1, the relevant conduct defined in § 1B1.3(a)(2) applies. Doc. 88 at 9, ¶ 31; U.S.S.G. § 3D1.2(d).

possession with intent to distribute, and thus fall within the relevant conduct the Court could consider in assessing the enhancement. Had counsel made arguments to the contrary, the Court would have overruled them for lack of merit. Accordingly, counsel's failure to raise this argument was not prejudicial.[27]

Perez cannot show that his counsel's omissions regarding the two-level leadership enhancement prejudiced his defense. Accordingly, his claim of ineffective assistance on this ground fails under *Strickland*.

### 2.    Sentence Disparity

Perez also argues his counsel was ineffective because his sentence is disproportionate compared to others involved in the facts underlying this case. Perez notes his co-defendant, CD3, similarly pled guilty to possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), but was sentenced to 60 months' imprisonment despite having more criminal history than Perez. Additionally, Perez notes CD1 received a 100-month sentence despite admitting to distributing significantly more drugs than him. Perez further argues that unless CD2's sentence is significantly more than his, there would also be unwarranted disparity between the two because CD2 also admitted to distributing more drugs than him.

The resulting disparity between Perez's sentences and others, however, is not a product of ineffective assistance of counsel. First, counsel made a disparity argument between Perez's and CD3's sentences. In the Sentencing Memorandum, counsel argued Perez's good character and specifically argued that the Court should impose a sentence "that avoids creating an unwarranted

---

[27] *Orange*, 447 F.3d at 797 ("If [an] omitted issue is without merit, then counsel's failure to raise it is not prejudicial, and thus is not ineffective assistance.").

disparity between his sentence and others.'"[28] Counsel then observed CD3 received a 60-month sentence, despite having more significant criminal history than Perez.[29] Because counsel argued for a downward variance to avoid unwarranted sentence disparity between Perez and CD3, counsel did not perform deficiently.

While counsel did not make a sentencing disparity argument between Perez, CD1, and CD2, disparity between Perez, CD1, and CD2 is permissible under Tenth Circuit precedent. "Disparate sentences are allowed where the disparity is explicable by the facts on the record."[30] Such facts warranting disparity include a "decision to accept responsibility and assist the government."[31] Here, the disparity between Perez and CD1 and possible disparity between Perez and CD2 is warranted because CD1 and CD2 cooperated with and provided substantial assistance to the Government, whereas Perez did not. Accordingly, any disparity argument counsel might have made concerning CD1 and CD2 would have lacked merit, and Perez was not prejudiced by counsel's failure to make it.[32]

Perez cannot show that his counsel provided ineffective assistance concerning the disparity between his sentence and others. Accordingly, his claim of ineffective assistance on this ground fails under *Strickland*.

---

[28] Doc. 90 at 12–15.

[29] *Id.* at 15.

[30] *United States v. Zapata*, 546 F.3d 1179, 1194 (10th Cir. 2008) (citation omitted).

[31] *Id.* (citation omitted).

[32] *Orange*, 447 F.3d at 797.

### 3.    Supervised Release

Perez further argues his counsel was ineffective by failing to object to the Court's sentence of a five-year term of supervised release. Perez points to the PSR, which states "[t]he guideline range for a term of supervised release is 1 year to 3 years."[33] But the PSR also states that statute required the Court to "impose a term of supervised release of at least three years."[34] Perez concedes that the Court was within its discretion to impose a five-year term, but argues if his counsel raised the PSR's discrepancy, the Court might have imposed the minimum three-year term instead.

This argument presents nothing more than sheer possibility without proof. In imposing the five-year term against Perez, the Court stated the period of supervision was "necessary to make sure when he's finished his term in prison, that he does not fall back into those old ways."[35] Perez offers no proof that an objection by counsel based on the PSR's discrepancy would have changed the Court's reasoning. Accordingly, Plaintiff cannot establish prejudice by his counsel's omission such that his claim of ineffective assistance on this ground fails under *Strickland*.[36]

## B.    Gound Requiring an Evidentiary Hearing: Importation Enhancement

Finally, Perez argues his counsel was ineffective by conceding to the two-level enhancement for importation of methamphetamine under U.S.S.G. § 2D1.1(b)(5). The PSR recommended this two-level enhancement because Perez was involved in the importation of methamphetamine from Mexico without specifying which methamphetamine it was referring to.[37]

---

[33] Doc. 88 at 16, ¶ 79.

[34] *Id.* at ¶ 78 (citing 21 U.S.C. § 841(b)(1)(C)).

[35] Doc. 108 at 88.

[36] *See United States v. Rushin*, 642 F.3d 1299, 1307 (10th Cir. 2011) ("Because possibilities without proof are endless, they are no measure of counsel's performance.").

[37] Doc. 88 at 10, ¶ 32.

Counsel initially objected to this enhancement in the PSR but withdrew the objection in the Sentencing Memorandum. Perez argues this concession constitutes ineffective assistance, and counsel should have raised various arguments at the sentencing hearing.

As the Government points out, Perez's arguments concerning the importation enhancement largely dispute the facts underlying his *offense* conduct, that is, his dealings with CD3. In assessing the importation enhancement, however, the Court could have considered the facts surrounding Perez's *relevant* conduct, that is, his dealings with CD1 and CD2. The Government argues that had counsel raised Perez's arguments concerning his dealings with CD3, it would have made no difference because his dealings with CD1 and CD2 satisfy the importation enhancement's requirements. But the record does not conclusively establish which conduct underlies the importation enhancement because counsel withdrew the objection to it and, as such, it was not discussed at the sentencing hearing. Accordingly, the Court will consider all of Perez's conduct here, including his arguments concerning his dealings with CD3.

Perez's arguments fall into three categories: (1) lack of importation; (2) lack of knowledge of importation; and (3) lack of involvement in the importation. Perez's lack of involvement argument does not require an evidentiary hearing to resolve. In this argument, Perez argues he was not involved in the importation of the methamphetamine associated with CD3, and counsel was ineffective for failing to object on this basis. This "involvement" issue was the center of his counsel's initial objection to the importation enhancement, albeit concerning Perez's dealings with CD1 and CD2. There, the parties disputed whether the Government had enough evidence to prove by preponderance of the evidence that Perez himself was involved in the importation of methamphetamine from Mexico based on his dealings with CD1 and CD2.[38] But, after reviewing

---

[38] *See id.* at 29–31, ¶¶ 142–49.

the relevant law, counsel withdrew his objection in the Sentencing Memorandum, citing *United States v. Redifer*.[39]

In *Redifer*, a defendant argued the district court erred in assessing an importation enhancement against him because he was not charged with any importation offense.[40] The Tenth Circuit concluded the defendant's objection was meritless, citing opinions from the Fifth and Ninth Circuits concluding that a defendant does not need to be personally involved in the importation of drugs to receive a § 2D1.1(b)(5) assessment.[41] The Tenth Circuit stated: "[w]e will follow our sister circuits and conclude that is was sufficient for the government to show that the drugs were imported."[42] Counsel quoted this statement in the Sentencing Memorandum to concede the objection, thus, conceding that the Government was not required to show Perez himself was involved in the importation.

In light of *Redifer*, the Court would have overruled any argument that Perez must be personally involved in the importation for the enhancement to apply regardless of whether it was made about his dealings with CD1, CD2, or CD3. Thus, Perez cannot show prejudice in counsel's concession and failure to raise this objection at the sentencing hearing.

But Perez's lack of importation and lack of knowledge arguments cannot be conclusively resolved on the record. In his lack of importation argument, Perez argues his counsel was ineffective by failing to argue that the Government did not prove the methamphetamine CD3 acquired was imported from Mexico. The Government attempts to avoid this issue by arguing

---

[39] 631 F. App'x 548 (10th Cir. 2015).

[40] *Id.* at 565.

[41] *Id.*

[42] *Id.*

Perez's dealings with CD3 were irrelevant to the Court's assessment of the importation enhancement given his dealings with CD1 and CD2. And the Government argues it presented sufficient evidence that the methamphetamine concerning CD2 was imported from Mexico. Perez did not file a reply challenging this argument. As previously explained, however, the record is not clear on which conduct underlies the importation enhancement. Thus, the Court will hear evidence concerning whether counsel was ineffective for failing to object on this basis.

In his lack of knowledge argument, Perez argues his counsel was ineffective for failing to argue § 2D1.1(b)(5)'s text[43] imposes a scienter requirement and that the Government failed to prove that Perez knew the methamphetamine was imported. The Tenth Circuit has not interpreted the scope of § 2D1.1(b)(5)'s scienter requirement, largely resolving such disputes on the ground that the government proved such knowledge regardless of what its interpretation may be.[44] Outside of the Tenth Circuit, circuits are split on the correct interpretation of § 2D1.1(b)(5).[45] Because of the circuit split and the Tenth Circuit's silence, the scienter argument was available for counsel to make and would not have been automatically foreclosed by Tenth Circuit precedent.

---

[43] "If (A) the offense involved the importation of amphetamine or methamphetamine or the manufacture of amphetamine or methamphetamine from listed chemicals that the defendant knew were imported unlawfully, and (B) the defendant is not subject to an adjustment under § 3B1.2 (Mitigating Role), increase by 2 levels."

[44] *Redifer*, 631 F. App'x at 565 ("We need not resolve this issue, because regardless of the correct reading of the Guideline provision, we determine that the government proved by preponderance of the evidence that [the defendant] knew the methamphetamine was imported."); *United States v. Valdez*, 723 F. App'x 624, 627 (10th Cir. 2018) ("This Court has not yet squarely addressed this scienter issue and we need not in this case."); *see also United States v. Lara*, 2024 WL 2931011, at *7 (10th Cir. June 11, 2024) (resolving a scienter challenge to the importation assessment on alternative grounds).

[45] *Compare United States v. Serfass*, 684 F.3d 548, 551 (5th Cir. 2012) ("Thus, the § 2D1.1(b)(5) sentencing enhancement applies if 'the offense involved the importation of amphetamine or methamphetamine' regardless of whether the defendant had knowledge of that importation."); *United States v. Werkmeister*, 62 F.4th 465, 469 (8th Cir. 2023) (adopting *Serfass*'s rationale), *with United States v. Job*, 871 F.3d 852, 871–72 (9th Cir. 2017) (declining to adopt *Serfass*'s rationale).

In addition, because counsel withdrew his objection to the importation enhancement, there was insufficient testimony presented demonstrating the Government could prove Perez's knowledge of such importation in his dealings with CD1, CD2, and CD3 regardless of whether § 2D1.1(b)(5) requires proof of such knowledge. And because counsel's initial objection concerned Perez's *involvement* in the importation of the drugs associated with CD1 and CD2, not his *knowledge* of such, the record does not establish that counsel's withdrawal was a strategic decision after determining no such scienter requirement exists, as the Government contends. Thus, after reviewing the record, the Court concludes it does not conclusively establish other grounds that foreclose Perez from relief based on his lack of knowledge argument.

Accordingly, the Court determines a limited hearing on Perez's § 2255 Motion is necessary to determine whether his counsel was ineffective by failing to argue (1) the Government did not present evidence that the methamphetamine CD1, CD2 or CD3 acquired was imported from Mexico; and (2) § 2D1.1(b)(5) imposes a scienter requirement as it relates to his dealings with CD1, CD2, and CD3.

## C.    Instructions on Future Proceedings

The Court intends to provisionally appoint Perez new counsel for purposes of this matter. That counsel shall provide Perez with the documents necessary to update his financial affidavit demonstrating he remains entitled to appointed counsel under 18 U.S.C. § 3006A.[46] Once the updated financial affidavit is filed and approved, appointed counsel will no longer be "provisionally" appointed, and will assist Perez with preparing for and conducting the evidentiary hearing ordered herein. The Court will initiate the process and timeline for returning Perez to this

---

[46] *See Swazo v. Wyo. Dep't of Corr. State Penitentiary Warden*, 23 F.3d 332, 334 (10th Cir. 1994) ("If the district court determines a hearing is required, it must appoint counsel.").

judicial district for the evidentiary hearing and will set the hearing in conjunction with that timeline and counsels' availability.

**IT IS THEREFORE ORDERED** that Perez's Motion to Vacate, Set Aside, or Correct the Sentence Pursuant to 28 U.S.C. § 2255 (Doc. 114) is **DENIED in part**. The Court will resolve the remainder of Perez's Motion after holding an evidentiary hearing to be set at a future date.

**IT IS SO ORDERED.**

Dated this 15th day of April, 2026.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE